## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

|  |  |  |
|---|---|---|
| JOHNNY R. ALEXANDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:05-CV-096-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed May 27, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on October 20, 2005, Defendant filed her brief on November 30, 2005, and Plaintiff filed his reply on December 19, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits on June 30, 2003, and for supplemental security income benefits protectively on June 24, 2003, alleging disability beginning February 2, 2002. Tr. 13, 161-64, 279-81. Plaintiff's applications were denied initially and upon reconsideration. Tr. 13, 26-32, 36-40. Plaintiff filed a Request for Hearing by Administrative Law Judge on November 6, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on October 2, 2004. Tr. 13, 41-42, 291-316. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 294-307. John Simonds, a medical expert ("ME") and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 307-16. The ALJ issued a decision unfavorable to Plaintiff on March 18, 2004. Tr. 10-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements through at least March 31, 2007, and that Plaintiff had not engaged in substantial gainful activity at any time since February 2, 2002. Tr. 13-14, 20. He found that Plaintiff has "severe" impairments, including chronic back pain due to a history of back injuries and a lumbar laminectomy and desectomy and fusion at the L4-5 level. Tr. 14, 20. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 18.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  Tr. 20.

The ALJ found that Plaintiff could not return to his past relevant work as a welder, rig operator, loader, oil field worker, or yard worker.  Tr. 18, 20.  He noted that Plaintiff was considered a "younger individual" with a limited education.  20 C.F.R. § 416.963-.964.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work activity, limited to jobs that do not require stooping, crawling, kneeling, or climbing stairs and ramps more than occasionally; that do not require Plaintiff to balance or climb scaffolds, ladders, and ropes; that do not require sitting without the opportunity to occasionally stand in addition to a lunch and normal legal breaks during the work; that do not require walking more than 3 blocks distance at one time with the opportunity to sit; that do not require standing more 20 minutes at one time with the opportunity to sit; that do not require working above shoulder level with the upper extremity; and that do not require working at unguarded heights or near unguarded hazardous mechanical equipment.  Tr. 19-20.  Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 19, 21.  The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of bench assembler, with 300,000 jobs nationally; and bench assembler in the jewelry industry, with 119,000 jobs nationally. *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on December 10, 2004. Tr. 8-9. The Appeals Council issued its opinion on January 28, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 5-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On May 27, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or

mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.   In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 19, 21.

### III.   DISCUSSION

Plaintiff submits the following points of error:

1.    The ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence.

2.    The ALJ failed to consider the evidence of pain.

3.    The ALJ's failure to follow the treating doctor rule is legal error.

4.    The ALJ committed legal error by relying on a defective hypothetical.

5.    The ALJ's failure to consider the combination of impairments is legal error.

6.    The ALJ's failure to consider whether Plaintiff could maintain employment is legal error.

**1.    Whether the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.**

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff was examined for low back pain on September 30, 1996, at Mount Carmel Medical Center. He had been lifting an air lock. A radiological report indicated some type of benign appearing bony tumor from the lower lateral side of the left ilium which was probably some type of benign osteoma or a benign osteochondroma. Tr. 129.

On November 5, 1996, Jeffery Greenberg, a neurosurgeon, reported that Plaintiff, with a long history of back pain, had apparently injured himself with heavy lifting. His history included a serious auto accident in 1979, another accident in 1983, and a back injury related to heavy lifting in about 1990. His neurological examination indicated straight leg raising on the left was positive at some 80 degrees with left paraspinous back pain, range of motion of the lumbar spine was decreased in all planes, and some point tenderness to the left of midline about the level of L4. Everything else was normal or essentially normal. An x-ray of the lumbar spine from the preceding September looked grossly normal. In light of Plaintiff's chronic symptoms, Dr. Greenberg recommended an MRI. Tr. 132-33. Plaintiff had an MRI of the lumbar spine on November 14, 1996. The impression was a left posterolateral bulging of the L5-S1 disc without signs of S1 nerve root compression and central and left posterolateral bulging of the L4-5 disc without signs of compression of the L5 nerves detected. Tr. 134.

In October 1996 Dr. Kevin Komes, M.D., examined Plaintiff for back pain. He reported Plaintiff's history and that he was working. Plaintiff was taking no medications but had been taking Propacet, DayPro, and Robaxin until they ran out. He reported that Plaintiff had a slow stiffened gait and decreased trunk rotation. Straight leg raise gave pulling in the back area bilaterally at 60 degrees, and his range of motion of the lumbar spine showed moderately reduced forward flexion. Other tests were normal. His assessment was back pain with minimal objective findings and no radicular component. He recommended rapid integration into functional activities through physical therapy. Plaintiff stated that the only light duty available would be pushing a broom, and if he had to push a broom he feels that he would "go down." Dr. Komes saw Plaintiff again on October 18, 1996. Plaintiff reported continuing nonradiating back pain, rated at 6 out of 10. He is lifting 25 pounds and sitting on a bicycle up to 15 minutes. His range of motion was markedly improved. No paraspinal spasm was noted. Dr. Komes recommended returning to work with restrictions and

continuing with therapy. Tr. 152. On October 23, 1996, Dr. Komes reported that Plaintiff was working but stated that his pain was worse.Tr. 149. Dr. Komes recommended holding the therapy, continuing work with restrictions, and refering to Dr. Greenberg for evaluation. On November 11, 1996, Plaintiff continued to complain of back pain, and Dr. Komes agreed with Dr. Greenberg's recommendation for an MRI and recommended continuing with work with restrictions. Tr. 147. On November 11, 1996, Dr. Komes indicated that Plaintiff's MRI was essentially unchanged from an earlier MRI, with no significant radiographic or clinical findings, and that his recommendations for work and therapy should be continued. Tr. 145. On December 11, 1996, Dr. Komes reported that Plaintiff had been fired from his job, that Plaintiff had subjective back complaints without significant radiographic or physical findings, that there was no evidence of back dysfunction which would warrant permanent restrictions, and that Plaintiff's problems were self-limited without physiologic basis. Tr. 142.

Dr. David Ball, an orthopedic surgeon, examined Plaintiff on January 28, 1997. Plaintiff was complaining of low back pain and associated pain in both lower extremities. He reported continued difficulty with back pain since his September 1996 injury. He continued work until he was laid off on December 6, 1996, and he had not worked since that time. Plaintiff reported that Dr. Greenberg said his back did not require surgery. He reported physical therapy under Dr. Komes. Dr. Ball examined Plaintiff and had x-rays taken. His opinion was that the x-rays showed a significant disc narrowing at the L5-S1 level and some reduction in the lumbar lordosis indicating chronic muscle tightness in the low back area. Otherwise the x-rays were normal. He did not think the disc was herniated but that irritation of the disc was producing the low back and leg pain. He opined that his L5-S1 lumbar disc syndrome was aggravated by the recent lifting. He recommended continued conservative medical treatment and thought that a series of epidural injections would be appropriate.

If the problems continued, he thought that a myelogram and post-myelogram CT scan should be considered. Tr. 137-38.

Plaintiff had a neurosurgical consultation with Dr. Eustaquio Abay on May 13, 1997. Examination of prior x-rays of his LS spine showed mild degenerative changes. He diagnosed low back sprain, with bilateral sciatica, varying left more than right, and right more than left. He recommended conservative therapy of an epidural block, and if problems persist, then a myelogram/CT could be done. Tr. 200. The myelogram/CT was subsequently performed on August 27, 1997. From a visit on August 28, 1997, Dr. Abay noted that the procedure showed a disk protrusion at L4-5, which impinges the L5 root. Possible surgery was discussed. The surgery was discussed again during a visit on October 28, 1997. Tr. 198. Plaintiff eventually had the surgery on December 19, 1997. Dr. Abay reported that Plaintiff had a diffuse disc herniation at L4-5 with bilateral L5 radiculopathy. Tr. 161. Plaintiff did very well and was relieved of his lower extremity pain. Tr. 159. At a visit on February 24, 1998, Dr. Abay reported that Plaintiff was doing well. He had virtually no complaints. He had no low back or leg pain. He was returned to work on light duty. His wife reported on March 11, 1998, that Plaintiff was doing very well and had no pain in his back or legs with light duty work. Tr. 196.

Plaintiff was referred to O. Martin Franklin, D.O., for a consultative orthopedic examination on October 25, 2002. Plaintiff reported chronic pain even after surgery. However, Plaintiff reported a decrease in pain to 5:10 following surgery. He still required medication to reduce the pain to 3:10. He indicated that he could not then afford medications or the care of a physician. He complained of pain all day and all night, and it was getting worse. He said that he could stand one and one half hours, sit for 45 minutes doing a job, and walk one flat city block. He was currently taking OTC analgesics only. He had a scar in the lumbosacral region from his back surgery. He was tender to palpation. He had mild erythema and edema around this region, no increased temperature, and no

radicular pain. Plaintiff could walk on his heels, could not walk on his toes, and could squat and rise with help only. His thoracic spine was nontender; his straight leg raising was 80 degrees bilaterally. His lumbar range of Motion was reduced to 75 degrees flexion and 20 degrees extension, but otherwise normal.  Dr. Franklin's impression was low back pain secondary to injury post surgical neuropathic changes, intermittent abdominal pain, obesity, and untreated hypertension. Tr. 203-05. A related and limited radiological report indicated mild degenerative changes. Tr. 206.

Plaintiff saw Dr. Penny Jeffery of the Rural Care Clinic for blisters on his feet on January (or November) 25, 2002. She opined that the blisters were caused by athlete's foot and prescribed Tinactin. Tr. 246. He reported again at Rural Care Clinic on March 6, 2003, complaining of back pain and indicating that he has had it off and on since his surgery in 1997. He reported that the pain had been tolerable but indicated that it was worse on that day. He was assessed to have acute low back pain - sciatica and was prescribed medication. Tr. 245. Plaintiff returned on June 23, 2003, and again on August 25, 2003, complaining of ongoing low back pain and tingling in his legs. He was examined and prescribed medication on those occasions. Tr. 243-44. He saw Dr. Jeffery on September 12, 2003, for continuing low back pain, and into right buttock. He reported that the pain was worst while sitting and it tingles down both legs. He stated that he was unable to work and was trying to get disability. He stated that his earlier surgery had cured his pain and he returned to full work for one to one and a half years. Then, his pain gradually got worse. Dr. Jeffery reviewed his medication history and prescribed medication. She noted tenderness of his paraspinal muscles, right more than left, reduced range of motion, straight leg raise test negative on right and positive on left clear to toes, and gait was antalgic. She indicated that she would check on getting an MRI. Tr. 241-42.

On September 22, 2003, MRIs were performed by the Hendrick Health System on Plaintiff's lumbar spine and thoracic spine. The report indicated that the intervertebral disc space height and

desiccation was seen involving the L4-5 and L5-S1 levels, at the L4-5 level there was evidence of left-sided hemilaminotomy with post-operative changes in the adjacent area. There was scar tissue seen to surround the left L5 nerve root. Minimal bilateral neural foraminal narrowing was seen secondary to subforaminal disc bulge and degenerative facet disease. There was no residual recurrent disc seen at the surgical site. At the L5-S1 level, broad-based disc bulge was seen without significant canal stenosis or neural foraminal narrowing. Degenerative facet disease was seen bilaterally at this level. Degenerative changes of the mid and lower thoracic spine were seen. Intervertebral disc space height loss was seen involving the L4-5 and L5-S1 levels. Other matters seen appeared normal. Tr. 239-40.

Dr. Jeffery completed a form regarding Plaintiff's disability claim dated November 7, 2003. She indicated in the form that Plaintiff was currently disabled, that he was unable to walk over one and a half blocks,  that he was unable to sit over 5 minutes, that he had poor balance, that he could not sit, stand or walk at all during an eight hour workday, and that he could not use his feet for repetitive movements, such as driving a car. Tr. 234-38.  She signed a letter dated February 17, 2004, stating that Plaintiff had developed a scar around the LS nerve root and that Plaintiff would be unable to work for the next year. Tr. 232. She saw Plaintiff on February 27, 2004, for a follow up for his visit to the emergency room for heart fluttering. He reported that NSAID and muscle relaxant had helped. He was prescribed Naproxen and Soma for his symptoms. On March 1, 2004, he called and reported that he was not able to get Soma, and Flexeril was prescribed instead. He returned in June 2004 and reported that he was having insomnia. Examination revealed that he was in no distress. His strength was 5/5 and symmetrical. Tr. 275. He reported in July 2004 that he had been taking over-the-counter Metaproxen in place of Naproxen and became dizzy and nauseated. He reported that Naproxen was not helping his pain. He was advised to discontinue Naproxen and was started on Tylox. He was referred to chronic pain management. Tr. 273.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because he failed to consider obesity. Pl.'s Br. at 5-6, 20, 21. The court finds that the ALJ was justified in not considering obesity, as discussed under point of error 5.

Plaintiff argues that he is entitled to a finding of disability because he met or equaled the requirements for Listing 1.04A. Pl.'s Br. at 1, 5-7. The ALJ considered whether Plaintiff met or equaled the requirements of a Listing and determined that he did not. Tr. 19. A claimant cannot be found disabled pursuant to the Appendix 1 listings unless he can show that he meets or equals all of the specified medical criteria of the particular listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). To meet the requirements of Listing 1.04A, a claimant must show a disorder of the spine resulting in a compromise of a nerve root (including the cauda equina) or the spinal cord, with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. p, app. 1 § 1.04A. Plaintiff did not meet all of the requirements of Listing 1.04A. Therefore, this impairment does not qualify for the listing.

Specifically, Plaintiff did not have nerve root compression, motor loss (atrophy with associated weakness or muscle weakness), or sensory or reflex loss. An MRI showed scar tissue around the left L5 nerve root and a broad-based disc bulge at L5-S1 but no nerve root involvement or herniation. Tr. 15, 239. There was no evidence of significant canal stenosis or neural foraminal narrowing. Tr. 15, 239. The evidence showed good motor strength. Tr. 17, 205, 308. Plaintiff has not had any muscle atrophy or radicular pain. Tr. 15, 204, 309. Straight leg raising was 80 degrees bilaterally and an x-ray showed only mild degenerative changes. Tr. 15, 18, 204, 308. Dr. Simonds, the ME, testified that Plaintiff's back impairment did not meet or equal the requirements of a listing and that Plaintiff had no atrophy and had a negative straight leg raising. Tr. 18, 309. The ALJ's

finding that Plaintiff did not meet or equal the criteria of a listing is, therefore, supported by substantial evidence.

After reviewing the medical evidence, the ALJ noted that Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 18. The ALJ correctly noted that Plaintiff returned to work after his surgery in 1997 and worked until February 2002 when he was terminated from his job. He continued to perform heavy work in spite of his back pain which he reported that he has had since his surgery. He admitted that he has looked for other employment in the oil fields, but no one would hire him due to his previous injury. In addition, Plaintiff did not require any further treatment for his back until March 2003.[1]

The ALJ considered the effect of Plaintiff's pain, which is discussed further under point of error 2. He then determined that Plaintiff retained the ability to work at the sedentary level and subject to the restrictions specified under point of error 4, which addresses the ALJ's hypothetical question.

After determining that Plaintiff could not return to his past relevant work, the ALJ determined, based on his hypothetical question and a VE's testimony, that Plaintiff retained the capacity to perform work which exists in significant numbers in the national economy and that he was not disabled under the Social Security Act.

After considering all of the evidence and the conclusions reached under the other points of error herein, the court finds that the ALJ's decision is supported by substantial evidence and that Plaintiff's appeal should be denied.

---

[1] Plaintiff was seen by Dr. Jeffery, apparently in January or November 2002, for blisters on his feet caused by athlete's foot. He did not report any problems with his back.

2.      **Whether the ALJ erred by failing to consider the evidence of pain.**

Plaintiff alleges that the ALJ erred because he failed to consider the evidence of Plaintiff's pain. Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms.  The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The record demonstrates that the ALJ found that the evidence supported a finding that Plaintiff had chronic back pain due to a history of back injury in 1979 and 1996 and a lumbar laminectomy and discectomy and fusion at the L4-5 level which caused significant vocationally relevant limitations. Tr. 14. Thus, the ALJ considered and found that Plaintiff had an impairment that could be expected to produce pain. The ALJ then evaluated Plaintiff's subjective complaints, consistent with the second prong of the SSR 96-7p process, by considering the matters presented that might relate to Plaintiff's complaints, such as the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; other treatment for relief of pain; functional restrictions; and Plaintiff's daily activities. Tr. 17.

The ALJ found that the Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. He noted that Plaintiff returned to work after his surgery in 1997 and worked until February 2002 when he was terminated from his job. He noted that

-13-

Plaintiff continued to perform heavy work in spite of his back pain, which he reported to have had since the surgery. He noted that Plaintiff admitted that he looked for other employment in the oil field industry, but no one would hire him due to his previous injury. He noted that Plaintiff did not require any additional treatment for his back until March 2003. Tr. 18.

The ALJ recognized that Plaintiff may experience some degree of pain or discomfort due to his back pain at times of overexertion. He stated, however, that even a moderate level of pain is not, in and of itself, incompatible with the performance of certain levels of sustained work activity.

The ALJ then determined that the objective medical evidence, the testimony of Plaintiff, and the non-medical evidence did not establish that Plaintiff's ability to function was so severely impaired as to preclude work at the sedentary level of exertion that does not require him to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; does not require him to balance or climb scaffolds, ladders, and ropes; does not require him to sit without the opportunity to occasionally stand in addition to a lunch and normal legal breaks during the work day; does not require him to walk more than three blocks distance at one time without the opportunity to sit; does not require him to stand more than 20 minutes at one time without the opportunity to sit; does not require him to work above shoulder level with the upper extremity; and does not require him to work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 18.

The ALJ is instructed to consider the entire record. SSR 96-7p. The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations regarding the nature of his pain, in making his credibility determination. The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). Moreover, the ALJ was in the best position to judge Plaintiff's credibility at the hearing. The court

finds that the ALJ properly considered the evidence of Plaintiff's pain and that the ALJ's credibility

determination is supported by substantial evidence.

**3.      Whether the ALJ erred by failing to follow the treating physician rule.**

Plaintiff argues under this point of error that the ALJ presented a hypothetical question to

the VE based on the medical expert's testimony, the medical expert's testimony was based only on

an incomplete restatement of Plaintiff's treating physician's reports, and the ALJ concluded from

the testimony that Plaintiff could perform sedentary activities with certain limitations which failed

to include all of the limitations noted in the record, such as pain and obesity. These matters are

discussed under points of error 4 and 5 and will not be repeated under this point of error.

These arguments will be addressed under this point of error:

A.  Whether the ALJ erred by failing to give considerable weight to the physician's opinions,

diagnoses, and medical evidence without considering the factors provided in 20 C.F.R. §

404.1527(d)(2) or by showing good cause for not giving them considerable weight.

B.  Whether the ALJ erred by failing to give good cause for rejecting the treating physician's

opinion that Plaintiff could not sit, stand, or walk in an 8 hour work-like setting.

C.  Whether the ALJ erred by rejecting the treating Physician's opinions and relying on the

opinions of a medical expert who had not examined the claimant.

The opinion of a treating physician who is familiar with the claimant's impairments,

treatments, and responses should be accorded great weight in determining disability. A treating

physician's opinion on the nature and severity of a patient's impairment will be given controlling

weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] record."   20 C.F.R.

§ 404.1527(d)(2). Moreover, the Fifth Circuit held in *Newton v. Apfel* that

-15-

absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

209 F.3d 448 (5th Cir. 2000).

On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Moreover, "[a]mong the opinions of treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner,'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. §404.1527(e)(1)). The regulation requires that the ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians. The factors do not apply to opinions "reserved to the Commissioner."

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d at 790.

Dr. Jeffery, a non-specialist treating physician, filled out an RFC Questionnaire dated November 7, 2003, at Plaintiff's request. Dr. Jeffery answered that Plaintiff was not able to work

on a 40 hour per week basis. Tr. 235. She also stated in a letter dated February 17, 2004, that Plaintiff will be unable to work for a year. Tr. 232. These opinions are legal conclusions that are reserved to the Commissioner. Thus, these opinions are not entitled to controlling weight, they have no special significance, and the ALJ was not required to consider the six factors under the regulation, even though they are opinions of a treating physician. To the extent that Plaintiff claims that these matters are entitled to controlling weight or to any other special significance, those claims are without merit.

Even though the ALJ accepted most of the restrictions on Plaintiff's ability to work that were checked off by Dr. Jeffery in the questionnaire, it contains other restrictions that the ALJ did not accept or include in his hypothetical question. He did not include restrictions that Plaintiff could not use his hand for repetitive pushing and pulling, that addressed a mild restriction in exposure to change in temperature and humidity, and that Plaintiff could not bend, crawl, or climb at all,[2] These restrictions selected by Dr. Jeffery are not well-supported by medically acceptable diagnostic techniques and are inconsistent with the substantial evidence in the record. None of Plaintiff's other treating or examining physicians or specialists ever suggested the level of restrictions selected by Dr. Jeffery on the questionnaire, and Dr. Jeffery herself had never previously suggested such restrictions. Moreover, there is nothing in the record that explains why Plaintiff had become so restricted. Thus, the evidence from Dr. Jeffery's questionnaire is considered conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, and is otherwise unsupported by the evidence.

The ALJ, therefore, had good cause for not giving considerable weight to the unsupported opinions in Dr. Jeffery's statements indicating that Plaintiff was disabled or to the unsupported

---

[2] Instead, the ALJ included limitations that Plaintiff could only occasionally stoop, crouch, crawl, or climb stairs and ramps and could not climb scaffolds, ladders, or ropes at all.

restrictions that were not accepted by the ALJ, and the ALJ was not required to perform a detailed analysis under 20 C.F.R. § 404.1527(d)(2). Further, the ALJ did not err by failing to give good cause for rejecting a treating physician's conclusory statement that Plaintiff could not sit, stand, or walk in an 8 hour work-like setting.[3]

Finally, the Plaintiff argues under this point of error that the ALJ erred by rejecting the treating physician's opinions and relying on the opinions of a medical expert who had not examined the claimant. However, the ALJ accepted most of Dr. Jeffery's opinions and had good reasons for rejecting some of her opinions, and Dr. O. Martin Franklin was not a non-examining physician. Dr. Franklin is an orthopedic specialist, and he examined Plaintiff. The ALJ did not err in considering Dr. Franklin's opinions or in rejecting some of Dr. Jeffery's opinions as discussed elsewhere.

For the reasons stated, the court finds that the ALJ did not err in the matters claimed under this point of error and that the ALJ's decisions discussed under this point of error are supported by substantial evidence.

**4.      Whether the ALJ erred by relying on a defective hypothetical.**

Plaintiff argues that the ALJ committed legal error in using a defective hypothetical question because it did not include all of Plaintiff's impairments and limitations.

At the hearing the ALJ asked the VE to assume a person 46 years of age, with eight years of formal education, the same past work experience as the Plaintiff, and the ability to do sedentary work[4] with the following restrictions and requirements:

---

[3] This statement suggests that Plaintiff can only lie down during the day. The physician probably intended this restriction to further indicate that Plaintiff could not work, which is a determination reserved to the Commissioner.

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 CFR § 404.1567(a).

Not required to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally. Not required to climb scaffolds, ladders, and ropes, or balance. Not required to sit without the opportunity to occasionally stand in addition to the lunch and normal legal breaks during the workday. Not required to walk more than three blocks distance at one time without the opportunity to sit. Not required to stand more than 20 minutes at one time without the opportunity to sit. Not required to work above shoulder level with the upper extremities. Not required to push or pull with the feet. Not required to work at unguarded heights or near unguarded hazardous mechanical equipment.

He then asked the VE whether, in his opinion, such a hypothetical person could perform any jobs in the national economy and, if so, how many. The VE testified that such a person could work as a bench assembler, with 300,000 jobs in the nation, and as a bench assembly person, with 111,000 jobs in the nation. The Plaintiff's attorney was then given the opportunity to question the VE. The attorney asked whether such an individual could get a job if he could only sit up to 45 minutes at a time and had to leave his work station three times a day for 30 to 45 minutes. The VE said that such a hypothetical person would not be able to do those jobs.

The Fifth Circuit has held that in order for a determination of non-disability to stand, the hypothetical question posed to the vocational expert by the ALJ must reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant must be allowed the opportunity to correct the deficiencies in the ALJ's question by mentioning or suggesting to the VE any defects in the hypothetical question. *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). Here the Plaintiff's attorney was given the opportunity to ask questions and correct any deficiencies in the ALJ's questions as required by *Bowling*. Plaintiff's attorney did, in fact, ask the VE whether those jobs would be available to a person with certain additional limitations, to which the VE said they would not. The ALJ incorporated all of the limitations that he ultimately recognized. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he does not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The limitations included in the ALJ's hypothetical question are based on the record. Dr. Jeffery answered questions on a form on November 7, 2003. Her answers indicated that Plaintiff can lift and carry 10 pounds occasionally; cannot use his hand for repetitive pushing and pulling; cannot use his feet for repetitive movements such as driving a car; cannot bend, crawl, or climb; can occasionally squat; can frequently reach above shoulder level; cannot engage in activities with unprotected heights; and is mildly limited in being around moving machinery and in exposure to changes in temperature and humidity. Tr. 237-38. Plaintiff testified that he could stand up to 20 minutes; walk up to three blocks at a time and tries to do it every day; lift up to 10 pounds; and squat with some difficulty rising. Tr. 301-02, 304. Dr. Simonds, a medical expert, testified that he thought Plaintiff would be limited to sedentary work. Tr. 309.

The ALJ did not include in his hypothetical any limitation that the hypothetical person could not use his hand for repetitive pushing and pulling and did not include that the person was mildly restricted in exposure to change in temperature and humidity. Exposure to change in temperature and humidity, however, was not mentioned anywhere in the record other than in Dr. Jeffery's checklist questionnaire, such limitation is not supported by any other evidence, no explanation for the limitation is in the record, and the statement is conclusory. Similarly, Plaintiff's use of his hand for pushing and pulling has not been an issue in the case. Plaintiff did  testified that his *arms* fall asleep and "it just hurts constantly," but there was little or no mention previously in the record of a problem with Plaintiff's arms or hands. Tr. 306. I find that this statement is also conclusory, and the ALJ did not err by not including limitations in his hypothetical addressing a mild restriction for exposure to temperature and humidity or a restriction against use of his hand for repetitive pushing and pulling. The ALJ accommodated Dr. Jeffery's checklist opinion that Plaintiff could not bend, crawl, or climb with limitations that the hypothetical person could only occasionally stoop, crouch, crawl, or climb stairs and ramps and could not climb scaffolds, ladders, or ropes. The ALJ accepted

-20-

Plaintiff's testimony that he could stand up to 20 minutes and could walk up to three blocks. Tr. 234, 236. The rest of the limitations included in the ALJ's hypothetical are based on the most restrictive opinions of Plaintiff's limitations found in the record. The ALJ rejected the additional limitations suggested by Dr. Jeffery's answers to her questionnaire and suggested by the question asked by Plaintiff's representative at the administrative hearing.

The ALJ reasonably incorporated into the hypothetical all of the disabilities of the Plaintiff that the ALJ found to be supported by the evidence. The court finds that the ALJ's decision is supported by substantial evidence and finds no error.

**5.      Whether the ALJ erred by failing to consider Plaintiff's combination of impairments**.

Plaintiff claims under his fifth point of error that the ALJ failed to consider Plaintiff's combination of impairments. He first argues that the ALJ failed to address the concerns of SSR 96-8p and SSR 96-9p in determining Plaintiff's RFC, specifically his ability to perform all of the strength demands of sedentary work. This argument appears to be unintended or misplaced, does not appear to relate to any issue regarding the combination of impairments, and is not explained or mentioned further. Moreover, Plaintiff's Reply Brief does not repeat or mention this argument. Thus, the court finds that such argument is without merit.

Next, Plaintiff argues that the ALJ failed to consider Plaintiff's obesity in combination with his other impairments. However, Plaintiff failed to mention obesity as an impairment in any of the following: Plaintiff's request for review of the ALJ's decision, Plaintiff's request for hearing by an ALJ, Plaintiff's request for reconsideration, Plaintiff's claimant's statement, Plaintiff's request for reconsideration of the disability report, Plaintiff's pain report, Plaintiff's daily activity questionnaire, and Plaintiff's adult disability report. Tr. 8, 33, 35, 41, 70-76, 85-86, 89, 99, 110, 116, 122. Also, Plaintiff never testified that obesity caused him any problems or limitations, and the medical records

never mentioned any problems due to obesity. Tr. 294-307. Plaintiff only points to Dr. Franklin's examination report which includes obesity in his diagnostic impressions. Tr. 205.

Obesity is still a factor to be considered, even after the deletion of Listing 9.09. However, Plaintiff did not meet his burden of showing how his obesity affected his other conditions. SSR 00-3p specifically states, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." Plaintiff did not bear his burden of showing that obesity affected his ability to work or his other impairments.

For these reasons, Plaintiff's arguments under this point are without merit.

## 6. Whether the ALJ erred by failing to consider whether Plaintiff could maintain employment.

In his sixth point of error, Plaintiff argues that the ALJ erred by failing to consider whether he could maintain employment. He cites *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) for the proposition that an ALJ must find that a claimant is capable of obtaining work *and* is capable of maintaining the work in order to support a finding of not disabled. To support this argument, Plaintiff refers to several statements in the record regarding the condition of Plaintiff's back, including a letter written by Dr. Jeffery, a questionnaire completed by Dr. Jeffery, and reports of MRIs from Hendrick Health System. Pl.'s Br. at 25. He argues that, considering such impairments, combined with his pain and obesity, he would not be able to maintain any type of employment. *Id.* He further argues that all along he has had *chronic* severe pain from his lumbar spinal disorder. Pl.'s Rply. Br. at 16.

Disability determinations turn on whether applicants can perform substantial gainful activity which inherently requires work activity on a sustained basis.

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.

*Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). Thus, substantial gainful activity contemplates capacity for employment on a regular and continuing basis. *See, e.g., Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

Courts once wrestled with whether ALJs should make explicit findings on the issue. However, it is now settled in the Fifth Circuit that reviewing courts generally assume that administrative residual functional capacity assessments include implicit findings of ability to work on a regular and continuing basis. *Id.* at 619. "Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Id.* An exception is when medical or other evidence shows that symptoms caused by a severe impairment wax and wane. Absent such showing, "the claimant's ability to maintain employment is subsumed in the RFC determination." *Perez v. Barnhart,* 415 F.3d 457, 465 (5th Cir. 2005).

Here, Plaintiff claims that he would not be able to maintain any type of employment and that he had symptoms that were "chronic." He failed to show, however, that his symptoms wax and wane. Thus, the ALJ was not required to make explicit findings regarding Plaintiff's ability to maintain employment on a regular and continuing basis. Plaintiff's sixth point of error, therefore, is without merit.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 2nd day of September, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**